IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN BELL,<br><br>Plaintiff,<br><br>v.<br><br>EH HOME HEALTH OF THE MID ATLANTIC LLC d/b/a ENHABIT HOME HEALTH & HOSPICE,<br><br>Defendant. | CIVIL ACTION NO. |

**COMPLAINT**

Plaintiff Susan Bell files this Complaint against EH Home Health of the Mid Atlantic LLC d/b/a Enhabit Home Health & Hospice ("Enhabit"), seeking relief from Enhabit's violations of the False Claims Act ("FCA" – 31 U.S.C. § 3730(h)), Pennsylvania Whistleblower Law ("WBL" – 43 P.S.§§ 1421 *et seq.*), and Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et seq.*), and in support states the following:

**PRELIMINARY STATEMENT**

1. When companies prioritize profits over patients, danger abounds and the safety of those patients is put at risk.

2. For patients, this risk – which puts their health and safety at issue – is often priced into the cost of doing business by many healthcare providers. Bell, however, refused to view her patients as simply a business. Instead, Bell prioritized the medical needs of her patients above all else.

3. In late 2025, Bell uncovered numerous issues of waste, wrongdoing, and fraud within Enhabit, which Bell reported. When Bell's initial reporting was ignored, she escalated those concerns and in March 2026, Enhabit could no longer ignore her reports. In response,

Enhabit began subjecting Bell to retaliatory conduct. First, by punishing Bell for having a disability. Then by terminating her employment on May 11, 2026.

4. Bell is initiating this matter to address the retaliatory actions undertaken by Enhabit after she reported issues of waste, wrongdoing, and fraud by Enhabit.

## THE PARTIES

5. Plaintiff Susan Bell is an adult individual who resides in Mohnton, Pennsylvania.

6. Defendant Enhabit is a corporation organized under Delaware law with headquarters located at 6688 North Central Expressway, Suite 1300, Dallas, Texas 75206.

7. At all relevant times, Enhabit acted by and through its authorized agents, servants, workmen, and/or employees, who were acting within the course and scope of their employment with Enhabit and in furtherance of Enhabit's business.

8. At all relevant times, Enhabit is and has been an "employer" and/or "federal contractor" as defined under the FCA and is accordingly subject to the provisions of the FCA.

9. At all relevant times, Enhabit is and has been an "employer" and "agent of a public body" within the meaning of the WBL in that it receives Medicaid funding from the Commonwealth of Pennsylvania and is accordingly subject to the provisions of the WBL.

10. At all relevant times, Bell was an "employee" of Enhabit as defined under the FCA and WBL and was entitled to the protection of the provisions of the FCA and WBL.

11. At all relevant times, Enhabit continuously employed more than 15 employees and was a covered employer as defined by the ADA.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the claims of Bell arise under the laws of the United States and Bell is seeking

redress for violations of federal laws. The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, because such claims are so closely related to Bell's federal claims that they form part of the same case or controversy.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to Bell's claims occurred at a Wyomissing, Pennsylvania facility which was managed and operated by Enhabit.

## FACTUAL BACKGROUND

A. Enhabit's Reliance Upon Federal and State Governments for Business

14. Enhabit is a provider of home health and hospice services in the United States. Enhabit has two main business segments: Home Health and Hospice.

15. Enhabit's Home Health business provides a comprehensive range of Medicare-certified skilled home health services, including skilled nursing, physical, occupational and speech therapy, medical social work, and home health aide services. Enhabit's Home Health patients are typically older adults with chronic conditions and significant functional limitations who are on multiple medications. Enhabit's Home Health patients are referred to the company by acute care hospitals, inpatient rehabilitation facilities, surgery centers, assisted living facilities, and skilled nursing facilities, as well as community physicians. In 2024, Enhabit's Home Health business generated over $824 million.

16. Enhabit's Hospice business provides high-quality hospice services to terminally ill patients and their families. In 2024, Enhabit's Hospice business generated approximately $210 million.

17. As stated in Enhabit's public reports, nearly all of its revenue is from payment it receives for patient care services from the federal government (primarily Medicare program but

also Medicaid). In 2024, Enhabit received $722.5 million from Medicare and Medicare Advantage. Other revenue sources for Enhabit include managed care plans, private insurers, and state governments.

18. Since Enhabit receives funding from Medicare and Medicaid programs, it is subject to various governmental reviews, audits, and investigations to verify its compliance with these programs and applicable laws and regulations. Enhabit is also subject to audits under various federal and state government programs in which third-party firms engaged by CMS conduct extensive reviews of claims data and medical and other records to identify potential improper payments under the Medicare program.

19. Enhabit has publicly acknowledged that an adverse review, audit or investigation could result in

a. required refunding or retroactive adjustment of amounts Enhabit has been paid by federal or state programs or private payers;

b. state or federal agencies imposing fines, penalties, and other sanctions on Enhabit;

c. loss of Enhabit's ability to participate in the Medicare program, state programs or one or more private payer networks; and/or

d. damage to Enhabit's business and reputation in various markets.

B. <u>Bell's Reporting of Enhabit's Illegal Conduct</u>

20. Bell is a medical professional who has spent the past 22 years caring for others. Bell has 14 years of experience as a registered nurse and 8 years of experience as a licensed practical nurse.

21. Bell began her employment with Enhabit on December 1, 2023, as Clinical Team Leader.

22. For nearly 2.5 years, Bell performed the essential duties of her job, and she performed them well as Bell earned positive performance reviews, frequently volunteered to fill in when other employees were unavailable, was relied upon by Enhabit to perform managerial-level duties on the weekend, and earned merit-based raises each year of her employment.

23. In late 2025, Bell was providing medical treatment to a patient ("Patient 1") during a home visit. During that visit, Patient 1 stated that the regularly-assigned nurse ("Nurse 1") never took her vital signs. Given Patient 1's diagnosis, Bell believed that it was medically necessary to take Patient 1's vital signs to prevent developments like an infection or sepsis from occurring. In addition, taking Patient 1's vital signs was a requirement for Enhabit to continue receiving Medicare and/or Medicaid funding for Patient 1. Later that day, Bell made a formal patient complaint and reported this issue to Enhabit's Branch Director and Director of Operations.

24. After further investigation, Bell discovered that Nurse 1 had been forging Patient 1's medical records by inputting vital signs for Patient 1 despite never taking Patient 1's vitals during her visits.

25. Upon information and belief, Nurse 1's forged medical records for Patient 1 were submitted by Enhabit for payment through Medicare and/or Medicaid programs.

26. After Bell reported Nurse 1's wrongdoing and fraud, she had another home visit with Patient 1. Patient 1, again, stated that Nurse 1 was not taking her vitals during their home visit. After further investigation, Bell discovered that Nurse 1 was continuing to forge Patient 1's medical records by inputting vital signs for Patient 1 despite never taking Patient 1's vitals during her visits.

27. Upon information and belief, Nurse 1's forged medical records for Patient 1 continued to be submitted by Enhabit for payment through Medicare and/or Medicaid programs.

28. Bell reported these continued issues involving Nurse 1 and Patient 1 to Enhabit's Branch Director and Director of Operations. Despite Bell's repeated reports, Enhabit did not take any corrective action against Nurse 1.

29. In March 2026, Bell had a meeting with Enhabit's new Director of Operations, Linda Sullivan, and during this meeting Bell told Sullivan and others about her prior reports of wrongdoing and fraud involving Patient 1 and Nurse 1. In addition, Bell notified Sullivan that a Clinical Team Leader ("CTL 1") had been stealing from coworkers; had forged the number of hours she reported while working for Medicare and/or Medicaid patients; had not been trained on proper nursing procedures involving in-home patient care; had not been supervised during in-home visits when she was hired, as required by Enhabit's own policies and procedures; and had made repeated mistakes which threatened the quality of medical care Enhabit's patients were receiving. Finally, Bell told Sullivan and others that she had previously raised issues about CTL 1 to Brian Puleo, Enhabit's Vice President of Operations, and Puleo had specifically instructed Bell and others at Enhabit not to report or document those issues involving CTL 1.

C. Enhabit's Discriminatory and Retaliatory Conduct Against Bell

30. A few weeks after Bell's meeting with Sullivan, Enhabit disciplined Bell for accidentally misgendering someone during a phone call. During the disciplinary meeting for this incident, Bell reminded Sullivan that she was a disabled individual because of a physical hearing impairment which required her to use prescription hearing aids. Bell also stated that the purported issue, which involved Bell calling the caller John instead of Joan, was because she had

difficulty hearing the caller. In response, Sullivan acknowledged that she was aware of Bell's disability.

31. Despite knowledge and awareness of Bell's disability, Enhabit issued Bell a Final Written Warning. Enhabit did not have any further discussions about Bell's disability nor did it have any discussions on whether Bell needed any future accommodations for her disability.

32. Twelve days later, on May 11, 2026, Enhabit terminated Bell's employment. Enhabit refused to provide Bell with any specific information on why it was terminating her employment. Instead, when Bell filed for unemployment compensation benefits, Enhabit manufactured a series of complaints that Bell had never seen nor had Bell been aware of while she was an employee.

33. Upon information and belief, the manufactured reasons for Bell's firing were pretext.

34. Upon information and belief, the numerous reports of waste, wrongdoing, and fraud that Bell made implicated a pattern and practice of misconduct by Enhabit.

35. Upon information and belief, the numerous reports of waste, wrongdoing, and fraud that Bell made threatened continued federal and state funding for Enhabit.

36. Upon information and belief, Enhabit's failure to address and correct the pattern and practice of waste, wrongdoing, and fraud by its employees violated the terms and conditions of funding Defendant received from federal and state government programs.

37. It is believed that Enhabit acted willfully and in reckless disregard of Bell's rights under the ADA when it refused to engage in the interactive process with Bell to discuss which accommodations the company could provide for her disabilities.

38. It is believed that Enhabit acted willfully and in reckless disregard of Bell's rights under the ADA when it fired her because they failed to engage in the interactive process and/or believed that due to her medical condition, she was or would be unable to perform the essential functions of her job.

39. Bell, however, was able to perform the essential functions of her job as Clinical Team Leader at all relevant times.

40. As a result of Enhabit's discrimination and retaliatory conduct, Bell has suffered and will continue to suffer a substantial loss of earnings, including, but not limited to, loss of salary, benefits, health insurance, and other emoluments of employment.

41. On June 9, 2026, Bell filed a Charge of Discrimination against Enhabit with the Equal Employment Opportunity Commission ("EEOC"), alleging age and disability discrimination.

42. Bell's Charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

43. By letter dated June 26, 2026, the EEOC notified Bell of her right to file a civil action against Enhabit.

44. Bell has initiated this civil action within 90 days of receiving the EEOC's Right to Sue letter.

45. Bell has exhausted her administrative remedies under federal law.

## STATEMENT OF CLAIMS

**COUNT I**
Violations of the FCA – 31 U.S.C. § 3730(h)
(Plaintiff v. Defendant)

46. Bell incorporates by reference the allegations in Paragraphs 1 through 45, as if fully set forth herein.

47. By the actions described above, among others, Enhabit retaliated against Bell by terminating her employment weeks after she reported numerous instances of waste, wrongdoing, and fraud to Sullivan, in violation of the FCA. 31 U.S.C. §3730(h).

48. As a direct and proximate result of Enhabit's unlawful conduct in violation of the FCA, Bell has suffered, and continues to suffer, economic injury, harm to her reputation, humiliation, embarrassment, mental anguish, emotional distress, discomfort, and/or other injuries and irreparable harm for which she is entitled to an award of monetary damages, special damages, and other relief.

**COUNT II**
Violations of the WBL
(Plaintiff v. Defendant)

49. Bell incorporates by reference the allegations in Paragraphs 1 through 48, as if fully set forth herein.

50. On August 6, 2026, Bell filed a *Praecipe* for Writ of Summons against Enhabit in the Berks County Court of Common Pleas, preserving her WBL claims.

51. By the actions described above, among others, Enhabit retaliated against Bell by terminating her employment weeks after she reported numerous instances of waste, wrongdoing, and fraud to Sullivan, in violation of the WBL.

52. As a direct and proximate result of the Enhabit's unlawful conduct in violation of the WBL, Bell has suffered, and continues to suffer, economic injury, harm to her reputation, humiliation, embarrassment, mental anguish, emotional distress, discomfort, and/or other injuries and irreparable harm for which she is entitled to an award of monetary damages, special damages, and other relief.

**COUNT III**
Violations of the ADA
(Plaintiff v. Defendant)

53. Bell incorporates by reference the allegations in Paragraphs 1 through 52, as if fully set forth herein.

54. Bell has disabilities as defined by the ADA as Bell has a documented, medically confirmed physical hearing impairment for which she uses prescription hearing aids. This impairment substantially limits one or more major life activities, including hearing, and constitutes a disability within the meaning of the ADA.

55. Enhabit was aware of Bell's disabilities and still fired Bell because of her physical or mental impairments; her perceived physical or mental impairments; and/or due to her record of impairments.

56. The acts and omissions by Enhabit that are described in this Complaint constitute unlawful discrimination, harassment, failure to accommodate, and retaliation under the ADA.

57. As a proximate result of Enhabit's conduct, Bell has or will suffer substantial harm, for which Bell seeks general, compensatory, consequential, and punitive damages.

## REQUESTS FOR RELIEF

Accordingly, Bell requests that this Court enter judgment on her behalf and enter an order directing the award of other relief, as follows:

A. Finding that Enhabit violated the FCA;

B. Finding that Enhabit violated the WBL;

C. Finding that Enhabit violated the ADA;

D. Awarding Bell back pay, front pay, lost benefits, and other emoluments of employment and such other relief as is necessary to make her whole;

E. Awarding Bell double back pay damages pursuant to the FCA;

F. Awarding Bell compensatory damages for pain, humiliation, emotional distress, and damage to reputation;

G. Awarding Bell punitive damages under the ADA;

H. Awarding Bell special damages;

I. Awarding Bell attorneys' fees and costs;

J. Awarding Bell pre- and post-judgment interest as provided by law; and

K. Awarding Bell  any other relief to which she is entitled and/or which this Court deems necessary and proper.

**A jury trial is demanded for all claims triable by jury.**

Respectfully submitted,

/s/ Sammy Sugiura
Sammy Y. Sugiura
PA ID No. 209942
Greenberg Gross LLP
1650 Market Street, Suite 3600,
Philadelphia, PA 19103
SSugiura@GGTrialLaw.com

**Counsel for Plaintiff**